

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**SEP 27 2023**

ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RITA JACK                                                                PLAINTIFF

v.                                          CIVIL ACTION NO. 3:23cv2967-HTW-LGI

                                                                      DEFENDANTS
CITY OF MERIDIAN                                          JURY TRIAL DEMANDED

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

COMES NOW Plaintiff pro se, Rita Jack, brings this action against the Defendant, City of Meridian. Plaintiff Rita Jack was employed by the City of Meridian as a Police Lieutenant working in the Meridian Police Department. Despite the Plaintiff's over two decades of dedicated service as a Meridian Police Officer, the Defendant repeatedly overlooked her for promotions and engaged in retaliation after she filed discrimination complaints. Upon raising concerns about the promotion of less qualified white men, the Defendant retaliated against her. The Defendant subjected the Plaintiff to a series of adverse actions including transfers, reassignments, isolation, intimidation, ridicule, insolence, humiliation, and eventual termination. These actions inflicted significant distress and emotional pain upon the Plaintiff. The Defendant fostered and sustained a discriminatory and toxic workplace environment that persisted until the Plaintiff's termination. On October 5, 2022. In the lead-up to her termination, the plaintiff primarily conducted her work in the field, as this provided some respite from the hostile environment. The actions of the Defendant described herein constitute violations of Title VII of the Civil Rights Act of 1964, as amended.

I.      THE PARTIES TO THIS COMPLAINT

1. Plaintiff Rita Jack, an adult, black, female who resides at 1204 34th Street in Meridian, Mississippi, 39305. Email: rfjack1016@icloud.com, Phone: (601) 917-7992.

2. Defendant City of Meridian, a municipal agency within the city of Meridian, Mississippi, 39301 and service of process may be had by serving
   i.   City Clerk Brandye Latimer at 601 23rd Avenue, Meridian, MS 39301.
   ii.  City of Meridian has more than fifteen (15) employees
   iii. City of Meridian is an "employer" as defined by Title VII of the Civil Rights Act of 1964, as amended, and
   iv.  City of Meridian is subject to 42 U.S.C. § 1981.

1

3. The terms "Rita Jack', 'her', and 'Plaintiff" are used interchangeably throughout this complaint to refer to the same individual

4. The terms City of Meridian, Meridian Police Department, and the Defendant are used interchangeably throughout this complaint to refer to the same entity.

## II.    BASIS FOR JURISDICTION

1. Jurisdiction is proper in this honorable Court under 28 U.S.C. §1331 as this claim arises under federal law, specifically Title VII of the Civil Rights Act of 1964, as amended, and § 1981.

2. Venue is proper in this honorable Court under 28 U.S.C. §1391 because all work at issue was in and around the location of Lauderdale County, Mississippi.

3. The Plaintiff has filed three (3) separate EEOC charges of discrimination with the Equal Employment Opportunity Commission concerning allegations in this complaint.

4. The first of these EEOC charges (Charge No. 423-2020-01068) detailed in an EEOC inquiry filed May 29, 2020 asserts a claim of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq and alleged in a related complaint filed in Civil Action No. 3:22-00124-TSL-RPM, *Doc. 6*.

5. The first of these EEOC charges detailed in an EEOC inquiry filed May 29, 2020 also asserts a claim of race discrimination in violation of 42 U.S.C. as amended, § 1981 and alleged in the related Id.

6. The related Id. has been resolved by and between both parties agreeing to a settlement on the first charge. The settlement on the first charge is only intended to resolve the related Id. and is not a general release from all claims as stated in the agreed settlement. *Exhibit 1 (3 pages)*.

7. The second of these EEOC charges (Charge No. 423-2021-001224) detailed in an EEOC inquiry filed August 20, 2021 asserts a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and are concerning the events alleged in this complaint and related Id. *Exhibit 2 (5 pages).*

8. The Plaintiff filed her second charge within one-hundred and eighty (180) days of the date of the events alleged in this charge.

2

9. On May 9, 2022, the Plaintiff obtained a Notice of Right to Sue from the United States Equal Employment Opportunity Commission for her second Charge No. 423-2021-01224. *Exhibit 3.*

10. The Plaintiff has timely and fully exhausted her administrative remedies as to her second charge.

11. The third of these charges (Charge No. 423-2023-00037) detailed in the EEOC Charge of Discrimination asserts a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, concerning the events alleged in this complaint. *Exhibit 4 (6 pages).*

12. The Plaintiff filed her third charge within one-hundred and eighty (180) days of the date of the events alleged in that charge.

13. On June 29, 2023, the Plaintiff obtained a Notice of Right to Sue from the United States Equal Employment Opportunity Commission for her third Charge No. 423-2022-00037. *Exhibit 5*

14. The Plaintiff has timely and fully exhausted her administrative remedies as to her third charge.

15. The current complaint alleges facts raised in all the Plaintiff's EEOC charges.

16. The Plaintiff demands a trial by jury on all issues so triable.

III.     <u>STATEMENT OF FACTS</u>

17. The Plaintiff, a black female, commenced her full-time employment as a Police Officer with the City of Meridian, specifically within the Meridian Policer Department, on November 18, 1998, under a Civil Service appointment.

18. In the City of Meridian Police Department, the Mayor is responsible for determination promotions and appointing individuals to act or serve in vacant positions.

19. When a Civil Service position becomes vacant, the defendant submits a request to the Civil Service Commission to schedule testing for filling the position.

20. The Civil Service Commission approves a Civil Service testing announcement and testing date to be posted at the Civil Service office and all city departments.

21. On or about August 18, 2004, Plaintiff was promoted to fill the vacancy of Police Detective.

22. After a decade since Plaintiff's promotion to Police Detective and despite appearing on the Police Sergeant's eligibility list three times and the Police Lieutenant's eligibility list twice, the Defendant eventually appointed the Plaintiff as a Police Lieutenant on April 2, 2014, to fill the vacancy within the Meridian Police Department.

23. On January 29, 2010 the Plaintiff delivered a written grievance to the then Meridian Police Lee Shelbourn expressing her concerns that the "…department's recommending authority has excluded [her] me for the position of Sergeant for reasons unrelated to my leadership ability, performance records, accomplishments, and loyalty." *Exhibit 6.*

24. The January 29, 2010 letter to the Police Chief Shelbourn also expressed another grievance "…that the recommending authority has marginalized officers from eligible positions due to others within the department having an opinion that certain officers are unacceptable as a supervisor."

25. On February 1, 2010, the Plaintiff submitted another written request for the letter dated "…Friday, January 29, 2010 be placed in my department and City Hall personnel file." *Exhibit 7*

26. The Plaintiff's letter dated January 29, 2010 and February 1, 2010 was not made part of the Plaintiff's file as requested.

27. The Plaintiff submitted a series of more written requests regarding the Sergeant's eligibility's list that the Defendant did not approve. *Exhibit 8.*

28. On or about March 22, 2010, the Plaintiff submitted another grievance regarding the improprieties involved in the oral testing of candidates on the Police Lieutenant's eligibility lists by interview board members selected from the Meridian Police Department who were conducting interviews with the candidates before the scheduled interview. *Exhibit 9.*

29. The Defendant did not consider the Plaintiff to fill these vacancies.

30. The Defendant has not offered any explanation for the Plaintiff non-selection.

4

31. But for the Plaintiff's race and/or sex, the Defendant would have selected the Plaintiff.

32. Starting in 2010 and as recently as October 2022, during the Plaintiff's tenure at the Meridian Police Department, the City of Meridian consistently bypassed the Plaintiff for promotions to the rank of Police Captain or higher ranks whenever vacancies arose.

33. The Plaintiff has not received a performance evaluation for approximately seven years prior to her termination on October 5, 2022 with the last evaluation being conducted in October 2015. *Exhibit 10.*

34. But for the Plaintiff's race and/or sex, the Defendant would have considered the Plaintiff.

35. In 2016, the decision for the selection of a Meridian Police Captain was in the hands of Percy Bland, the Mayor of Meridian, who is a black male.

36. In 2016, Benny Dubose, a black male, was Police Chief.

37. In 2016, the Meridian Police Department had two Police Captain vacancies.

38. There were seven (7) applicants who completed the testing for Police Captain.

39. The Plaintiff was the only female and the remaining six (6) applicants who qualified to take the Police Captain's exam were males.

40. The Plaintiff was one of the six (6) applicants who scored a passing score of 70% or higher and eligible to proceed to the oral part of the test.

41. The applicant, Patrick Gale, a black male, did not meet the minimum passing score.

42. The Plaintiff achieved one of the top two scores on the written test.

43. The Plaintiff's final test score placed her as number two (2) on the Police Captain's eligibility list.

44. The Plaintiff was passed over and did not receive a promotion to one of the vacant police captain positions.

45. Mayor Percy Bland filled both the Meridian Police Captain vacancies with white males, John Griffith, and James Arrington.

46. James Arrington, a white male, has less education and less seniority than the Plaintiff as it pertains to the Police Captain's eligibility list.

47. The Defendant has not completed a performance evaluation on the Plaintiff since October 2015.

48. A recent performance evaluation is usually required when being considered for promotion.

49. Mayor Percy Bland did not consider the Plaintiff to fill this vacancy of Assistant Police Chief.

50. Mayor Bland has not offered any explanation for the Plaintiff's non-selection.

51. But for the Plaintiff's race and/or sex, Mayor Bland would have selected the Plaintiff.

52. During the Plaintiff's tenure at the Meridian Police Department, the City of Meridian has denied the Plaintiff an opportunity to serve as Assistant Police Chief or acting Assistant Police Chief or acting Police Chief of the department despite having more qualifications, experience, education, and seniority than others selected to fill the vacancies.

53. The Defendant did not consider the Plaintiff to fill these vacancies as they come opened.

54. The Defendant has not offered any explanation for the Plaintiff's non-selection.

55. But for the Plaintiff's race and/or sex, the Defendant would have selected the Plaintiff.

56. In 2016, the City of Meridian Police Chief was Benny Dubose, a black male.

57. On or about January 31, 2020 Mr. Dubose resigned his position.

58. After Mr. Dubose resignation, John Griffith, a white male, was appointed by Mayor Percy Bland to serve as Acting Police Chief.

59. Mayor Bland has not offered any explanation for the Plaintiff's non-selection.

60. In selecting Mr. Griffith, Mayor Percy Bland was motivated at least in part by the Plaintiff's race and/or sex.

61. But for the Plaintiff's race and/or sex, Mayor Percy Bland would have selected the Plaintiff.

62. On September 26, 2019, the Civil Service Commissioners approved the Civil Service announcement on accepting applications to fill the vacancy for Assistant Police Chief.

63. On or around October 9, 2019, the Plaintiff, a black female, applied and qualified for the newly vacant position of Assistant Police Chief.

64. Assistant Police Chief James Sharp, a black male, resigned his position as Assistant Police Chief on or about September 19, 2019,

65. There were three white male applicants who also applied for the vacant position of Assistant Police Chief.

66. On or about May 28, 2020 the Plaintiff filed multiple grievances with the Civil Service Commission regarding the Defendant's failure to complete the testing process for the Assistant Police Chief. *Exhibit 11*

67. During the Civil Service Commission meeting on June 9, 2020, the Plaintiff raised a complaint before the board regarding the Defendant attempting to eliminate the position of Assistant Police Chief from the organization's chain of command. The Defendant's efforts to do so were unsuccessful. *Exhibit 12 (2 pages).*

68. During the same Civil Service Commission meeting on June 9th, the Plaintiff raised another complaint before the board of being repeatedly denied the opportunity for promotion and to being recently removed from the position of acting Captain and being replaced by white males with less rank, experience, education, and qualifications.

69. During the same Commission meeting, the Plaintiff further complained these same white males have communicated with other in the department they will not work under the Plaintiff and administration encourages this type of behavior and obliges their requests. *Exhibit 13 (4 pages).*

7

70. At that time, the Plaintiff was the only candidate remaining candidate who applied, qualified, and remains eligible, and employed with the City of Meridian Police Department.

71. Mayor Percy Bland has given no reason to the Plaintiff for her non-selection.

72. By failing to complete the Assistant Police Chief testing process and promote the Plaintiff, Mayor Percy Bland was motivated at least in part by the Plaintiff's race and/or sex.

73. But for the Plaintiff's race and/or sex, Mayor Percy Bland would have selected the Plaintiff to fill the Assistant Police Chief vacancy.

74. On or around May 26, 2020, Mayor Percy Bland removed the Plaintiff from her position as acting Captain of Criminal Investigations Division and Internal Affairs Division.

75. Mayor Bland did not give the Plaintiff a reason for her removal.

76. At the same time of her removal as acting Captain, the Plaintiff was reassigned to the Training Division as Lieutenant.

77. The Plaintiff was replaced by Chris Read to serve as acting Captain of Criminal Investigations Division, a Sergeant, a rank lesser than the Plaintiff.

78. Chris Read is a white male whose qualifications, experience, and education are less than the Plaintiff.

79. In removing the Plaintiff as acting Captain, reassigning her to another division, and replacing her with white males whose qualifications, experience, and education are less than the Plaintiff, Mayor Percy Bland was motivated at least in part by the Plaintiff's race and/or sex.

80. But for the Plaintiff's race and/or sex, Mayor Bland would not have removed Plaintiff as acting Captain, reassigned, or replaced her.

81. The Defendant's reassignment was motivated at least in part by the Plaintiff's grievances and allegations of discrimination.

82. But for the Plaintiff's protected activity, the Defendant would not have reassigned the Plaintiff.

83. With the transfer to the Training Division, the Plaintiff served as the supervisor to training staff officers.

84. William Brunnell, a white male, was assigned to the Training Division full-time as a training officer and subordinate of the Plaintiff.

85. On or around May 13, 2020, a staff meeting attended by Mr. Brunnell and the Plaintiff discussed the new staff changes and assignments.

86. After the staff meeting held at the Meridian Police Department, Mr. Brunnell turned around, faced me, and said before he walked off "You stay in your lane and I'll stay in mine."

87. At the time Mr. Brunnell made the statement to me, I was shocked and dismayed at the disrespect he displayed towards me. The following day I reported Mr. Brunnell's behavior to the Police Chief, Charles Coleman.

88. Within a few weeks after the Plaintiff's transfer to the Training Division, Mr. Brunnell was transferred from the Training Division to the Meridian Police headquarters and was named acting Captain of Patrol Operations, which is a rank higher than the Plaintiff's rank of Lieutenant.

89. Whereas the Plaintiff was Mr. Read and Mr. Brunnell's supervisor a few weeks prior, they were now the Plaintiff's supervisor whose orders the Plaintiff was required to follow.

90. On or around May 29, 2020, the Plaintiff made an inquiry with the EEOC regarding the transfers and changes in assignment made by the Defendant. *Exhibit 14 (9 pages).*

91. In this inquiry, the Plaintiff alleged discrimination based on race and/or sex.

92. On information and belief, the Defendant's actions were motivated at least in part by the Plaintiff's race and/or sex.

93. On information and belief, but for the Plaintiff's race and/or sex, the Defendant would not have taken these actions against the Plaintiff.

94. Around the same time, Police Officer Jerry Bratu, a white male, stated that he did not want to work with the Plaintiff.

95. Previously, Mr. Bratu had communicated his dislike of the Plaintiff to other Meridian Police employees.

96. The Plaintiff filed a verbal grievance to Mr. Coleman and a written grievance in her EEOC complaint regarding Mr. Bratu's actions.

97. Mr. Bratu resigned his position when he was confronted about his statements and actions. The Defendant reinstated Mr. Bratu after the Plaintiff was terminated July 31, 2020.

98. On information and belief, Mr. Bratu's actions were motivated at least in part by the Plaintiff's race and/or sex.

99. On information and belief, but for the Plaintiff's race and/or sex, Mr. Bratu would not have taken these actions against the Plaintiff.

100. Following Mr. Dubose resignation as Police Chief, Mayor Percy Bland selected three applicants to interview for the newly vacant position of Meridian Police Chief.

101. The candidate selected to fill the position of Meridian Police Chief will have to serve 90 days as the interim before permanent appointment.

102. The Plaintiff, a black female, was one of the applicants selected to interview for the position of Police Chief and the other two applicants selected were James Arrington and Lewis Robbins who are both white males.

103. Mr. Griffith, a white male, who was recently appointed by Mayor Percy Bland, a black male, to serve as acting Police Chief did not interview for the position of Meridian Police Chief.

104. The interview board voted four-to-one in favor of the Plaintiff to fill the newly vacant position of Police Chief.

105. Mayor Percy Bland did not promote the Plaintiff to the position of Meridian Police Chief, but selected Lewis Robbins to serve as interim and to fill the position of Police Chief when he has completed serving 90 days as interim.

106. Mr. Robbins, a white male, had less experience, education, and inferior qualifications to the Plaintiff.

107. Mayor Percy Bland has given no reason to the Plaintiff for her non-selection.

108. In selecting Mr. Robbins, Mayor Percy Bland was motivated at least in part by the Plaintiff's race and/or sex.

109. But for the Plaintiff's race and/or sex, Mayor Percy Bland would have selected the Plaintiff.

110. After the Defendant selected Mr. Robbins as the Interim Police Chief, the Plaintiff was asked by the CAO Eddie Kelley to assist Mr. Robbins with his duties of administrative management and media relations.

111. During Mr. Robbins' short tenure of less than 90 days, Mr. Robbins heavily relied on the Plaintiff to assist him in his duties, meetings with the public, and in making personnel decisions.

112. Specifically, decisions regarding personnel duties during the early months of COVID in 2020 when employees were reluctant to fingerprint job applicants. The Plaintiff suggested a solution to require the employee to wear protective equipment while doing their job serving the public and employees who refuses will be handled according to progressive disciplinary policies.

113. Another instance of assistance Mr. Robbins needed was during a meeting with a high-profile public figure whose identity was stolen to purchase a cellphone. The meeting abruptly ended with the complainant requesting more be done to identify the suspect who opened the cellphone account at a wireless company located inside the city limits of Meridian. Mr. Robbins requested I respond to the location with him and the complainant to resolve the matter. Upon arrival to the location, I took the lead in the matter and was able to obtain information that was a resolution satisfying to the complainant.

114. On April 20, 2020 while the Plaintiff was out sick with COVID, Mr. Robbins resigned his position as interim Meridian Police Chief.

115. Following Mr. Robbins' resignation, Mayor Percy Bland comprised another interview board to interview new candidates selected by Mayor Bland to fill the vacancy of Meridian Police Chief.

116. Mayor Percy Bland did not consider the Plaintiff to fill this vacancy.

117. Mayor Percy Bland has given no reason to the Plaintiff for her non-selection.

11

118. But for the Plaintiff's race and/or sex, Mayor Percy Bland would have selected the Plaintiff.

119. Mayor Bland selected Charles Coleman, a black male, another candidate for the newly vacant position of Meridian Police Chief to serve as interim for 90 days.

120. In selecting Mr. Coleman, Mayor Bland was motivated at least in part by the Plaintiff's race and/or sex.

121. But for the Plaintiff's race and/or sex, Mayor Bland would have selected the Plaintiff.

122. On or around May 29, 2020, the Plaintiff filed a grievance with the Meridian Civil Service Commission.

123. In this grievance, the Plaintiff alleged discrimination based on race and sex.

124. On or around June 12, 2020, Mr. Kelley and Mr. Coleman had a meeting with the Plaintiff at City Hall to discuss an offer to promote the Plaintiff to the position of Police Captain with an annual salary of $65,000.

125. In exchange for this promotion, Plaintiff would have had to drop her grievances against the Defendant and successfully pass the Police Captain's promotional exam.

126. The Plaintiff rejected the offer during the same meeting. In response to the Plaintiff rejection of the offering, the Defendant suggested the Plaintiff to wait until after she had spoken with her husband before deciding.

127. The Plaintiff is enrolled in the Public Employment Retirement System and the last audit/assessment of the Plaintiff's retirement benefits has her averaging at or above $67,000 annually.

128. On or around June 12, 2020, the Defendant made the Plaintiff the same offer of promotion to Police Captain with an annual salary of $65,000 in writing. The Plaintiff again rejected the offer. *Exhibit 15.*

129. On or around June 25, 2020, the Defendant informed the Plaintiff she would be reassigned again starting on or around July 3, 2020.

130. On July 3, 2020, Mr. Coleman issued a duty assignment transfer "...from the position of Lieutenant in the Meridian Police Department to Lieutenant over

Neighborhood Watch and Drug Take Back [and] you will be stationed at the Bonita Lake Mall Workstation. You are to report to the Bonita Lake Mall Police Station on or before July 3, 2020, for your duty assignment." *Exhibit 16 (2 pages).*

131. The Defendant reassigned the Plaintiff to the less desirable office space at the Bonita Lakes Mall precinct where there was no restroom or running water.

132. The Defendant's reassignment of the Plaintiff was motivated at least in part by the Plaintiff's race and/or sex.

133. But for the Plaintiff's race and/or sex, the Defendant would not have reassigned the Plaintiff.

134. The Defendant's reassignment was motivated at least in part by the Plaintiff's grievances and allegations of discrimination.

135. But for the Plaintiff's protected activity, the Defendant would not have reassigned the Plaintiff.

136. On or about July 8, 2020, the Defendant placed the Plaintiff on administrative leave with pay.

137. The reasons for this decision were pretextual.

138. In placing the Plaintiff on administrative leave, the Defendant was motivated at least in part by the Plaintiff's race and/or sex.

139. But for the Plaintiff's race and/or sex, the Defendant would not have placed the Plaintiff on administrative leave.

140. In placing the Plaintiff on administrative leave, the Defendant was motivated at least in part by the Plaintiff's grievances and allegations of discrimination.

141. But for the Plaintiff's protected activity, the Defendant would not have placed the Plaintiff on administrative leave pending termination.

142. On or around August 4, 2020, Mr. Coleman resigned his position as interim Police Chief.

143. Mayor Percy Bland selected Patrick Gale, a black male, as acting Police Chief for the newly vacant position of Police Chief.

144.  Mayor Percy Bland did not consider the Plaintiff to fill this vacancy.

145.  Mayor Percy Bland has given no reason to the Plaintiff for her non-selection.

146.  But for the Plaintiff's race and/or sex, Mayor Percy Bland would have selected the Plaintiff.

147.  Mr. Gale had not applied to fill the position of Police Chief and was not likely qualified to fill the newly vacant position of Police Chief.

148.  Mr. Gale had not received the approval of the interview board.

149.  Mr. Gale had less education and experience than the Plaintiff.

150.  The Plaintiff had previously supervised Mr. Gale.

151.  In failing to consider the Plaintiff, Mayor Bland was motivated at least in part by the Plaintiff's race and/or sex.

152.  But for the Plaintiff's race and/or sex, Mayor Bland would have considered the Plaintiff.

153.  In failing to consider the Plaintiff, Mayor Bland was motivated at least in part by the Plaintiff's grievances and allegations of discrimination.

154.  But for the Plaintiff's protected activity, Mayor Bland would have considered the Plaintiff.

155.  Plaintiff has been terminated on three separate occasions by the City of Meridian while working as a Police Officer in the Meridian Police Department during the period of 2001 through 2022.

156.  The reasons for all the Plaintiff's terminations are presumably pretextual. Plaintiff's most recent termination from the City of Meridian Police Department while serving as a Meridian Police Officer with the rank of Lieutenant was effective October 5, 2022.

157.  Prior to the Plaintiff's termination on October 5, 2022, the Plaintiff filed a Civil Service Notice of Appeal on two reprimands filed against the Plaintiff April 1, 2021 and August 16, 2021.

14

158. On June 8, 2021 a Civil Service Notice of Appeal was filed on the reprimand dated April 1, 2021 contesting the issue of Notice and Due Process. *Exhibit 17 (3 pages).*

159. A Civil Service hearing was held on the issue of Notice and the board ruled that the Defendant did not give the Plaintiff proper Notice.

160. Another hearing was held on the issue of poor performance and the Civil Service Commission upheld the Defendant's adverse actions against the Plaintiff The matter has been appealed in the Lauderdale County Circuit Court.

161. On August 17, 2021 a Civil Service Notice of Appeal was filed on the reprimand dated August 16, 2021 contesting the issue of insubordination. *Exhibit 18 (3 pages).*

162. The Civil Service Board reversed the City's adverse actions taken against Plaintiff. *Exhibit 19.*

163. The Defendant has appealed the Civil Service Board's decision in the Lauderdale County Circuit Court. The Defendant's actions appears pretexual.

164. The Defendant's adverse actions against the Plaintiff was motivated at least in part by the Plaintiff's race and/or sex.

165. But for the Plaintiff's race and/or sex, the Defendant would not have issued the reprimands.

166. The Defendant's adverse actions against the Plaintiff was motivated at least in part by the Plaintiff's grievances and allegations of discrimination.

167. But for the Plaintiff's protected activity, the Defendant would not have issued the reprimands.

168. The Plaintiff's termination was conducted publicly in the presence of 4 or more Police Personnel and the public.

169. The Police Personnel in attendance during the Plaintiff's termination were once the Plaintiff's subordinates.

170. The Plaintiff's police equipment and credentials were confiscated in a public setting.

15

171. The police personnel who had recently humiliated and tarnished the Plaintiff's character with frivolous reprimands against the Plaintiff was also present when the Plaintiff's was publicly dismissed and her equipment and police credentials were confiscated.

172. Also prior to the Plaintiff's subsequent termination on October 5, 2022, Plaintiff's employment with the City of Meridian Police Department as a Police Lieutenant was terminated on July 31, 2020, a second time.

173. After a Civil Service Commission hearing, the Plaintiff's termination from the City of Meridian Police Department on July 31, 2020, was overturned by the Board. As a result, the Plaintiff was reinstated to the position of Police Lieutenant with full back pay, effective September 1, 2020. Plaintiff was represented by legal counsel during this hearing.

174. Plaintiff's termination on October 5, 2022 came after Plaintiff filed a Notice of Appeal in compliance with the City of Meridian's Civil Service Rules and state law regarding her July 31, 2021 termination.

175. Subsequently, the Civil Service Board held a hearing on the matter September 1, 2021 and the hearing resulted in a unanimous decision to reverse Plaintiff's termination and award full back pay with reinstatement "…that would be due and owing to Rita Jack [Plaintiff] as though she had not been terminated…." *Exhibit 20.*

176. Plaintiff is seeking punitive, compensatory, consequential, and liquidated damages as it relates to the unlawful termination on or about July 31, 2021 resulting in her reinstatement on September 1, 2021.

177. In terminating the Plaintiff, the Defendant was motivated at least in part by the Plaintiff's race and/or sex.

178. But for the Plaintiff's race and/or sex, the Defendant would not have terminated the Plaintiff.

179. In terminating the Plaintiff, the Defendant was motivated at least in part by the Plaintiff's grievances and allegations of discrimination.

180. But for the Plaintiff's protected activity, the Defendant would not have terminated the Plaintiff.

181. Plaintiff's first termination from the City of Meridian Police Department while serving as a Meridian Police Officer with the rank of Senior Police Officer was

effective September 14, 2001.

182. The reasons for this decision were pretextual.

183. Prior to Plaintiff's termination on September 14, 2001 from the City of Meridian Police Department, Plaintiff was suspended from duty without pay for a period of one (1) day effective March 26, 2001.

184. Plaintiff's termination on September 14, 2001 came after Plaintiff filed a Notice of Appeal in compliance with the City of Meridian's Civil Service Rules and state law regarding her one (1) day suspension effective March 26, 2001.

185. Subsequently, the Civil Service Commission Board from due consideration of the record found in favor of the Plaintiff and the one (1) day suspension imposed upon the Plaintiff was inappropriate and a reversal of suspension for (1) one day was ordered and the Plaintiff was awarded back pay "…in an amount necessary to make Officer Jack [the Plaintiff] whole as a result of the suspension." *Exhibit 21.*

186. Plaintiff is seeking punitive, compensatory, consequential, and liquidated damages as it relates to the unlawful suspension on March 26, 2001 resulting in the Civil Service Commission's issuance of a reversal order of the Plaintiff's unlawful suspension for one (1) day.

187. In terminating the Plaintiff, the Defendant was motivated at least in part by the Plaintiff's race and/or sex.

188. But for the Plaintiff's race and/or sex, the Defendant would not have terminated the Plaintiff.

189. In terminating the Plaintiff, the Defendant was motivated at least in part by the Plaintiff's grievances and allegations of discrimination.

190. But for the Plaintiff's protected activity, the Defendant would not have terminated the Plaintiff.

IV.    CAUSES OF ACTION

COUNT 1: RACE DISCRIMINATION UNDER § 1981

191. Plaintiff re-alleges and incorporates all averments as set forth in all other sections of this complaint.

192. Under § 1981, it is unlawful for an employer to take an adverse employment action against an employee based on that employee's race.

193. Here, as described above, Meridian took adverse employment action against the Plaintiff based on the Plaintiff's race.

194. The Defendant failed to promote the Plaintiff based on the Plaintiff's race.

195. The Defendant reassigned the Plaintiff's and isolated her from other police personnel.

196. The Defendant transferred the Plaintiff to different work locations that included locations where there was no restroom or running water.

197. The Defendant terminated the Plaintiff based on the Plaintiff's race.

198. The Defendant's actions constitute intentional discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended.

199. In doing so, the Defendant violated the law and harmed the Plaintiff.

200. As a direct and proximate result of the Defendant's unlawful, discriminatory conduct toward Plaintiff, the Plaintiff has lost wages, benefits, and has sustained other pecuniary losses.

201. Plaintiff has also been denied opportunities for career advancement.

202. The Defendant's discriminatory practices, insults, contempt, and disdain have been demeaning to the Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

203. The unlawful actions of the Defendant complained of in the preceding paragraphs were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

204. As a result of these retaliations based on race in violation of Title VII Civil Rights Act of 1964, as amended, the Defendant's willfully, intentionally, recklessly, maliciously, and negligently damaged Plaintiff in the amount of $500,000 (five-hundred thousand).

## COUNT II: RETALIATION UNDER § 1981

205. Plaintiff re-alleges and incorporates all averments as set forth in all other sections of this complaint.

206. Under § 1981, it is unlawful for an employer to take an adverse employment action against an employee based on that employee's race.

207. Here, as described above, Meridian took adverse employment action against the Plaintiff based on the Plaintiff's race.

208. The Defendant failed to promote the Plaintiff based on the Plaintiff's race.

209. The Defendant reassigned the Plaintiff's and isolated her from other police personnel.

210. The Defendant transferred the Plaintiff to different work locations that included locations where there was no restroom or running water.

211. The Defendant terminated the Plaintiff based on the Plaintiff's race.

212. The Defendant's actions constitute intentional discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 by retaliating against the Plaintiff for engaging in protective activities regarding race discrimination. Plaintiff is entitled to protection when engaging in protective activities that involves charges of misconduct in violation of Title VII of the Civil Rights Act of 1964, as amended.

213. In doing so, the Defendant violated the law and harmed the Plaintiff.

214. As a direct and proximate result of the Defendant's unlawful, discriminatory conduct toward Plaintiff, the Plaintiff has lost wages, benefits, and has sustained other pecuniary losses.

215. Plaintiff has also been denied opportunities for career advancement.

216. The Defendant's discriminatory practices, insults, contempt, and disdain have been demeaning to the Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

217. The unlawful actions of the Defendant complained of in the preceding paragraphs were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

218. As a result of these retaliations based on race in violation of Title VII Civil Rights Act of 1964, as amended, the Defendant's willfully, intentionally, recklessly, maliciously, and negligently damaged Plaintiff in the amount of $500,000 (five-hundred thousand).

## COUNT III:  RACE DISCRIMINATION UNDER TITLE VII

219.  Plaintiff re-alleges and incorporates all averments as set forth in all other sections of this complaint.

220.  Under Title VII, it is unlawful for an employer to take an adverse employment action against an employee based on that employee's race.

221.  Here, as described in the preceding paragraphs, the Defendant took adverse employee actions against the Plaintiff based on the Plaintiff's race.

222.  The Defendant failed to promote the Plaintiff on the basis of the Plaintiff's race.

223.  The Defendant reassigned the Plaintiff's and isolated her from other police personnel.

224.  The Defendant transferred the Plaintiff to different work locations that included locations where there was no restroom or running water.

225.  The Defendant terminated the Plaintiff based on the Plaintiff's race.

226.  The Defendant's actions constitute intentional discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 by retaliating against the Plaintiff for engaging in protective activities regarding race discrimination.  Plaintiff is entitled to protection when engaging in protective activities that involves charges of misconduct in violation of Title VII of the Civil Rights Act of 1964, as amended.

227.  In doing so, the Defendant violated the law and harmed the Plaintiff.

228.  As a direct and proximate result of the Defendant's unlawful, discriminatory conduct toward Plaintiff, the Plaintiff has lost wages, benefits, and has sustained other pecuniary losses.

229.  Plaintiff has also been denied opportunities for career advancement.

230. The Defendant's discriminatory practices, insults, contempt, and disdain have been demeaning to the Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

231. The unlawful actions of the Defendant complained of in the preceding paragraphs were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

232. As a result of these retaliations based on race in violation of Title VII Civil Rights Act of 1964, as amended, the Defendant's willfully, intentionally, recklessly, maliciously, and negligently damaged Plaintiff in the amount of $500,000 (five-hundred thousand).

## COUNT IV: SEX DISCRIMINATION UNDER TITLE VII

233. Plaintiff re-alleges and incorporates all averments as set forth in all other sections of this complaint.

234. Under Title VII, it is unlawful for an employer to take an adverse employment action against an employee on the basis of that employee's sex.

235. Here, as described above in the preceding paragraphs, the Defendant took adverse employment actions against the Plaintiff based on the Plaintiff's sex.

236. The Defendant failed to promote the Plaintiff based on the Plaintiff's sex.

237. The Defendant transferred the Plaintiff to different work locations that included locations where there was no restroom or running water.

238. The Defendant terminated the Plaintiff based on the Plaintiff's race.

239. The Defendant's actions constitute intentional discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 by retaliating against the Plaintiff for engaging in protective activities regarding race discrimination. Plaintiff is entitled to protection when engaging in protective activities that involves charges of misconduct in violation of Title VII of the Civil Rights Act of 1964, as amended.

240. In doing so, the Defendant violated the law and harmed the Plaintiff.

241. As a direct and proximate result of the Defendant's unlawful, discriminatory conduct toward Plaintiff, the Plaintiff has lost wages, benefits, and has sustained other pecuniary losses.

242. Plaintiff has also been denied opportunities for career advancement.

243. The Defendant's discriminatory practices, insults, contempt, and disdain have been demeaning to the Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

244. The unlawful actions of the Defendant complained of in the preceding paragraphs were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

245. As a result of these retaliations based on sex in violation of Title VII Civil Rights Act of 1964, as amended, the Defendant's willfully, intentionally, recklessly, maliciously, and negligently damaged Plaintiff in the amount of $500,000. (five-hundred thousand).

## COUNT V: RETALIATION UNDER TITLE VII

246. Plaintiff re-alleges and incorporates all averments as set forth in all other sections of this complaint.

247. Under § 1981, it is unlawful for an employer to take an adverse employment action against an employee based on that employee's sex.

248. Here, as described above, Meridian took adverse employment action against the Plaintiff based on the Plaintiff's sex.

249. The Defendant failed to promote the Plaintiff based on the Plaintiff's sex.

250. The Defendant reassigned the Plaintiff's and isolated her from other police personnel.

251. The Defendant transferred the Plaintiff to different work locations that included locations where there was no restroom or running water.

252. The Defendant terminated the Plaintiff based on the Plaintiff's sex.

253. The Defendant's actions constitute intentional discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 by retaliating against the Plaintiff for engaging in protective activities regarding race discrimination. Plaintiff is entitled

22

to protection when engaging in protective activities that involves charges of misconduct in violation of Title VII of the Civil Rights Act of 1964, as amended.

254. In doing so, the Defendant violated the law and harmed the Plaintiff.

255. As a direct and proximate result of the Defendant's unlawful, discriminatory conduct toward Plaintiff, the Plaintiff has lost wages, benefits, and has sustained other pecuniary losses.

256. Plaintiff has also been denied opportunities for career advancement.

257. The Defendant's discriminatory practices, insults, contempt, and disdain have been demeaning to the Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

258. The unlawful actions of the Defendant complained of in the preceding paragraphs were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

259. As a result of these retaliations based on sex in violation of Title VII Civil Rights Act of 1964, as amended, the Defendant's willfully, intentionally, recklessly, maliciously, and negligently damaged Plaintiff in the amount of $500,000 (five-hundred thousand).

## V.    PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF RESPECTFULLY PRAYS that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial. Upon that by jury thereon, Plaintiff prays that the following relief be granted:

260. Back pay;

261. Reinstatement and/or front pay, as appropriate.

262. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions.

263. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions,

23

264. Punitive damages commensurate with the misconduct and necessity to deter future violations of the law,

265. Pre- and post-judgement interest,

266. All costs, disbursements, expert witness fees, and reasonable attorney's fees allowed under actions brought pursuant to Title VII,

267. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions,

268. Plaintiff is seeking liquidated damages totaling $500,000 (five-hundred thousand)

269. As a result of these violations outlined in the preceding Paragraphs 1 through 259 of Title VII Civil Rights Act of 1964, as amended, the Defendant's willfully, intentionally, recklessly, maliciously, and negligently damaged Plaintiff in the amount TOTALING $3,000,000 (three million dollars)

270. Such further relief deemed just and proper.

Respectfully submitted on September 27, 2023

RITA FAYE JACK, Plaintiff

*Rita F. Jack*

1204-34th Street

Meridian, Ms 39305

(601) 917-7992

24